UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                         CASE NO: 2:15-cr-142-FtM-38CM

HUBERT LEE SOLOMON

_____/

## ORDER[1]

This matter comes before the Court on Defendant Hubert Lee Solomon's Motion to Suppress (Doc. #18) filed on January 11, 2016.  The United States of America ("the Government") filed a Response in Opposition (Doc. #23) on January 19, 2016.  The Court held a hearing on this Motion on February 4, 2016.  Defendant was present and represented by attorney Robert Harris.  The Government was represented by Assistant United States Attorney Jeffrey Michelland.  The matter is ripe for review.

### Background

On May 11, 2015, Fort Myers Police Department Officer Miguel Hernandez was patrolling the Dunbar neighborhood when he observed Defendant walking in the middle of Lafayette Street. Because Florida law requires a pedestrian to use a sidewalk when one is available, *see* Fla. Stat. § 316.130(3), Officer Hernandez decided to stop and cite Defendant.  After missing the turn onto Lafayette Street, Officer Hernandez circled the block and encountered Defendant further down the street.  This time, Defendant was

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

using the sidewalk.[2]   Nevertheless, Officer Hernandez decided to continue with the stop based on Defendant's earlier violation.  Officer Hernandez drove his patrol car onto a strip of grass in between the road and the sidewalk, activated his overhead lights, and blocked Defendant's path.

Officer Hernandez exited his vehicle and approached Defendant, who immediately reached into his pocket and pulled out his driver's license.  Defendant stated, "I don't know what's going on man; I just got stopped down the street."  Officer Hernandez informed Defendant that he was being stopped because he "failed to walk on the sidewalk down the street."  By this point, Officer Hernandez was face to face with Defendant. Officer Hernandez continued the conversation by inquiring why Defendant was walking on Lafayette Street at 11 p.m.  Defendant responded that he was "coming from his girlfriend's house," and that he "lives just down the street." Officer Hernandez then instructed Defendant to turn around and put his hands behind his back because he was going to pat him down.  Defendant complied.  During the pat down, Officer Hernandez discovered a gun in Defendant's front pocket.[3]  The entire encounter lasted no more than 23 seconds.  Believing the frisk for weapons violated his Fourth Amendment rights, Defendant now seeks to suppress this evidence.  For the reasons set forth below, the Court will grant that request.

---

[2] Officer Hernandez testified that he first spotted Defendant in the middle of the road near the south side of Lafayette Street.  Yet when he encountered Defendant moments later, Defendant was walking on the sidewalk on the north side of Lafayette Street.  As there is no clear cross walk anywhere on this stretch of Lafayette Street, it is reasonable to assume that Defendant was simply crossing the street.

[3] A later search revealed Defendant also had heroin in his possession.

**Discussion**

The Fourth Amendment guarantees individuals the right to be free from unreasonable searches and seizures of their persons.  U.S. Const. amend. IV. Law enforcement officers violate this right if they commit certain acts without the proper basis. A *Terry* stop is one such act.  *See Terry v. Ohio*, 392 U.S. 1, 30 (1968).  This brief, investigatory stop requires that the officer have a "reasonable articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citation omitted). If the officer wishes to escalate the *Terry* stop and conduct a pat-down or frisk for weapons, the officer must also believe that his safety, or the safety of others, is threatened.  *See United States v. Griffin*, 696 F.3d 1354, 1359 (11th Cir. 2012).  Whether the facts of a particular encounter justify a *Terry* stop and frisk is determined not by considering each fact in isolation, but rather by evaluating the totality of the circumstances.  *See id.*

The Government and Defendant agree that Officer Hernandez had probable cause to stop Defendant – Officer Hernandez spotted Defendant walking in the middle of the street in violation of Fla. Stat. § 316.130(3).  But the parties disagree whether there was a sufficient basis for Officer Hernandez to frisk Defendant.  From Defendant's perspective, Officer Hernandez stopped him for a traffic violation and then escalated the stop into a frisk solely because he was wearing black clothing and was nervous after Officer Hernandez stopped him.  The Government disagrees and directs the Court's attention to other facts, elicited through Officer Hernandez's testimony, that it believes justified the search.  Those facts include Officer Hernandez's testimony that the stop occurred late at night in a high-crime area known for shootings and drugs; that Defendant appeared

nervous to the point where his forehead was "glistening" from sweat; that he witnessed a heavy object/bulge in Defendant's pocket; and that Defendant was "blading" his body to shield his pocket containing the weapon when Officer Hernandez approached him.

Having reviewed all of the evidence and considered the parties' arguments, the Court finds Officer Hernandez did not have the requisite reasonable suspicion to pat-down or frisk Defendant for weapons. Officer Hernandez provided testimony that could establish reasonable suspicion, but Officer Hernandez's testimony is not the only evidence of what occurred during the stop. On the night in question, Officer Hernandez co-starred with Defendant in an episode of *Cops*, the television show. The *Cops* production team filmed the entire stop, thereby providing the Court with indisputable video evidence of the stop from its inception to Defendant's arrest. Interestingly, there are several discrepancies between Officer Hernandez's testimony and the *Cops* video.

Officer Hernandez testified that Defendant was "blading" during the encounter to conceal the right side of his body where the firearm was located. The video, however, shows that Defendant walked straight towards Officer Hernandez after he drove his patrol car up to the sidewalk and activated the overhead lights. At no point did Defendant turn or "blade" and conceal his right pocket where the firearm was eventually located. Once Defendant reached Officer Hernandez, he engaged Officer Hernandez in a brief, face-to-face conversation, during which his body was centered and not bladed. Faced with indisputable video evidence on this issue, the Court finds there is no evidence Defendant was blading his body at any point during the encounter.[4]

---

[4] The Government elicited testimony from Officer Hernandez that the *Cops* video had been edited and was missing approximately eight to nine seconds of video from the encounter. But at no time did the Government or Officer Hernandez contend that there were any acts committed in the eliminated video that

Officer Hernandez also testified that Defendant appeared "extremely nervous" because his eyes were bulging and his forehead was glistening from sweat.  The video, however, fails to show any unnatural or exaggerated eye movement by Defendant.  Nor does the video show Defendant sweating in a manner that indicates nervousness.  In fact, it would have been hard for Officer Hernandez to see Defendant's forehead "glistening" when he wore a hat during the entire encounter.  At most, the video shows Defendant endured the typical nerves experienced during any average police encounter.  When Officer Hernandez asked Defendant two questions relating to Defendant's presence in the area, Defendant calmly answered without hesitation.  Defendant explained that he just left his girlfriend's house and was on his way to his own home just down the street.  Less than three seconds later, Officer Hernandez grabbed Defendant to frisk him.  Faced with indisputable video evidence on this issue, the Court finds Defendant did not exhibit any nervousness that would raise suspicion in a reasonably prudent law enforcement officer.

Beyond the testimony refuted by the *Cops* video, the Court does not find Officer Hernandez's testimony regarding the bulge in Defendant's pocket credible.  At the hearing, Officer Hernandez testified that he saw a heavy object/bulge in Defendant's pocket when Defendant approached him.  Significantly, this fact was not included in the incident report/probable cause affidavit that Officer Hernandez was required to complete shortly after the stop.  More importantly, the Government failed to mention this fact in its Response.  It seems unlikely such a significant fact would be unearthed for the first time

---

are pertinent to the Court's analysis.  In fact, on cross examination, Officer Hernandez admitted that the blading he referenced in his testimony was included in the *Cops* video.

on direct examination  but rather was discovered after Officer Hernandez had the benefit of watching the *Cops* video.  Therefore, it seems this allegation constitutes nothing more than hindsight observation from the *Cops* video, rather than an observation made during the very brief encounter.

Because indisputable video evidence shows that Defendant was not blading and was not "extremely nervous," and having determined the observation of a bulge in Defendant's clothing was hindsight, the Court is left with three credible pieces of testimony.  The first is Officer Hernandez's testimony that the stop occurred late at night in a high-crime area.  This fact is undisputed.  The second is Officer Hernandez's testimony that Defendant was dressed in black basketball pants, a black t-shirt, and a black and purple hat.  This fact is also undisputed.  The third is Officer Hernandez's testimony that Defendant held his hands in front of his belt buckle, as if he were trying to conceal something.  The *Cops* video shows Defendant held his hands in this position for less than 5 seconds before pointing out his residence to Officer Hernandez.  When this evidence is viewed collectively as part of the totality-of-the-circumstances analysis, there is no articulable basis for why Officer Hernandez feared for his safety or the safety of others.[5]

In sum, Defendant was stopped for a sidewalk violation – a section of Florida law not typically associated with armed and dangerous criminals.  Defendant did not attempt to evade Officer Hernandez or take any evasive measure.  *Cf. United States v.* Hunter,

---

[5] The Government primarily relies on *United States v. Swain*, No. 3:08-cr-410-J-32TEM, 2009 WL 499260 (M.D. Fla. Feb. 26, 2009), in support of its argument that Officer Hernandez maintained reasonable suspicion to justify this search.  Although the defendant in *Swain* was stopped for violating the same sidewalk statute, *Swain* and this action are clearly distinguishable.  The defendant in *Swain* attempted to evade law enforcement by going to an abandoned apartment complex known for criminal activities, and when that did not work out, the defendant bladed his body in an obvious manner.  This is not analogous to this situation presented here.

291 F.3d 1302, 1306 (11th Cir. 2002) (finding reasonable suspicion for a frisk where, among other factors, the defendant walked away from illegal gambling when the officer approached).   There is no evidence Officer Hernandez suspected Defendant was engaged in more serious criminal conduct, or that any criminal conduct had occurred in the immediate area before the stop occurred.   *Cf. Id.*   Nor is there any evidence that Defendant acted in a manner that would make Officer Hernandez fear for his safety or the safety of others during the 23-second encounter.   The video evidence is clear: Defendant was walking home to his residence, which happens to be a high-crime area, and conveyed this fact to Officer Hernandez in a calm manner.   Nevertheless, Officer Hernandez almost immediately subjected Defendant to a pat down with no articulable basis for why he feared for his safety or the safety of others.   Because Officer Hernandez lacked the requisite reasonable suspicion to frisk Defendant for weapons, the evidence found during the pat down and any subsequent searches must be suppressed.[6]

Having determined the evidence must be suppressed, the Court notes that the instinct, experience, and intuition for ongoing criminal activity exhibited by Officer Hernandez in this action cannot be questioned.   In hindsight, his instinct proved correct – he recovered a firearm from Defendant, who is a convicted felon.   But, as the Honorable Roy B. Dalton recently stated, "the correctness of hindsight is not the proper lens for constitutional scrutiny." *United States v. Sampson*, 99 F. Supp. 3d 1352, 1359 (M.D. Fla.

---

[6] Had Officer Hernandez intended to arrest Defendant for the § 316.130(3) violation, the Court's analysis might reach a different result.  On cross-examination, however, Officer Hernandez admitted that he did not believe he could arrest Defendant for this violation because it is a civil infraction.  Whether or not Officer Hernandez's belief is correct, this testimony illustrates that Officer Hernandez had, at most, the intent to stop and cite Defendant, not arrest him and search him incident to a lawful arrest.

2015).  "The cost of abandoning the protections of the Fourth Amendment exacts too high a price to allow the result of the search to filter its constitutional propriety."  *Id.*

Accordingly, it is now

**ORDERED:**

Defendant Hubert Lee Solomon's Motion to Suppress (Doc. #18) is **GRANTED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 12th day of February 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record